Hogan, Maureen B., J.
The plaintiffs, Linda Pinti (“Pinti”) and Lesley Phillips (“Phillips”) (collectively, the “Plaintiffs”) brought this action against Emigrant Mortgage Company, Inc. (“Emigrant”) and Harold Wil-ion (“Wilion”), seeking a declaratory judgment that Emigrant’s foreclosure sale of their property was invalid and that Wilion does not have superior title to the property. Wilion answered the complaint and asserted a counterclaim against the Plaintiffs, seeking a declaratory judgment that the foreclosure of the mortgage was conducted in accordance with Massachusetts law and that there was no defect in the foreclosure sale of the property to Wilion.
This matter is now before the court on Wilion’s motion for summary judgment on the Plaintiffs’ claims and his counterclaim and on the Plaintiffs’ cross motion for summary judgment. For the following reasons, Wilion’s motion for summary judgment will be ALLOWED and the Plaintiffs’ cross motion for summary judgment will be DENIED.
BACKGROUND
The undisputed facts, as set forth in the summary judgment record, are as follows.
In 1982, Phillips bought a condominium located at 1643 Cambridge Street, Unit 52, Cambridge, Massachusetts (the “Property”). On or about July 11, 2005, Phillips conveyed the Property to herself and Pinti by Quitclaim deed and they took title as tenants by the entirety. On or about March 13, 2008, the Plaintiffs granted a mortgage (the “Mortgage”) on the Property to Emigrant to secure a loan in the principal amount of $160,000, which was evidenced by a promissory note (the “Note”). The Mortgage was recorded with the Registry of Deeds on March 25, 2008. Paragraph 22 of the Mortgage provides:
22. Acceleration: Remedies. Lender shall give notice to the Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; fb) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or of any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law . . .
If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale . . .
As provided in paragraph 38 of the Rider to the Mortgage, the plaintiffs “agree[d] that Paragraph 19 of the mortgage is hereby deleted, and I shall have no right to reinstate the Note and this Mortgage after acceleration thereof under any provision of the Mortgage. I further agree that notwithstanding anything contained in paragraph 22, I shall have no right to receive a notice of a right to reinstate after acceleration of this Mortgage.”
In August 2009, Plaintiffs became delinquent on their payments on the mortgage Note. On September 29, Emigrant sent the Plaintiffs a notice of default and right to cure, which stated:
(N)otice is hereby given pursuant to Paragraph 22 of the Mortgage that you failed to keep the promises/agreements made by you when you executed [the Note and Mortgage]. Specifically, you failed to keep the promises/agreements made under Paragraph 1 of the Mortgage by failing to make payment of the full amounts due under the Mortgage on August 1, 2009 and September 1, 2009. Demand is hereby made on behalf of the Mortgagee that you correct the above referenced defaults and make your loan current by making full payment prior to October 1, 2009 of the sum of [amount redacted] which sum represents regular monthly interest, principal, escrow payments, and late charges past due for August 1, 2009 and September 1, 2009. The amount set forth above necessary to correct the aforementioned defaults must be received no later than December 28, 2009. This date of December 28, 2009 allows you a full 90 days before the foreclosure action can begin by acceleration of the maturity of the unpaid balance of the Note and Mortgage or any other method authorized pursuant to Massachusetts General Laws c. 244 or any other law or other steps can be taken to terminate your ownership in the property or seize your home. Monthly payments will continue to accrue during this 90-day period. Accordingly, depending upon payment date, dll accruals to that date will also be due. . . Additionally, notice is hereby given that you have the right to assert in any *530 lawsuit for foreclosure and sale the nonexistence of a default and any other defense you may have to acceleration and foreclosure and sale. If the default is not cured within the period stated above, the Mortgagee, at its option, may require immediate payment in full of all sums secured by this security instrument without further demand and may invoke the Statutory Power of Sale and any other remedies permitted by applicable law.
This notice of default and right to cure clearly informed the Plaintiffs of the nature of the default, the manner in which they could cure the default, the deadline by which such cure must be made, and that failure to cure may result in acceleration of the debt and sale and seizure of the Properly. This notice also informed the Plaintiffs of their “right to assert in any lawsuit for foreclosure and sale the nonexistence of a default and any other defense [they] may have to acceleration and foreclosure and sale.” The Plaintiffs failed to cure the default and Emigrant moved forward with foreclosure of the Mortgage. On February 8, 2010, Emigrant filed an action under the Servicemembers’ Civil Relief Act (the “SCRA”) and obtained judgment thereunder on May 18, 2010.[1]
By letter, dated June 30, 2011, Pinti requested information from Emigrant regarding the owner of her loan, the holder of the Mortgage, any assignments of the Mortgage, and any purchases of the Note, as well as a copy of the Note “showing all endorsements and/or allonges that show that the purported ‘owner’ of [the Note] maintains legal ‘holder in due course’ status under M.G.L.c. 106, §3-302 as of today’s date.” Emigrant responded by letter, dated August 22, 2011, stating that the “owner of the loan is ESB-MH Holdings, LLC” and that the “holder and servicer of the loan is Emigrant Mortgage Company, Inc.” The letter enclosed a copy of the “a) note, with allonge; b) assignment of mortgage; and c) Servicing Agreement.” The letter also stated: “Please note that the assignment transferring ownership of the note and mortgage to ESB-MH Holdings, LLC has not been recorded and the original note and mortgage, as well as the assignment of mortgage are in the possession of Emigrant Mortgage Company, Inc., which is prosecuting the foreclosure action as the holder and servicer of the loan.” The Assignment of Mortgage, executed by Filippo Ruggierio, Vice President of Emigrant, on November 30,2009, assigned the Mortgage to ESB-MH Holdings, LLC. The Allonge to Note is first endorsed by Emigrant and states “PAY TO THE ORDER OF ESB-MH Holdings, LLC WITHOUT RECOURSE.” The Allonge is then endorsed by ESB-MH Holdings, LLC in blank, that is, it is signed by ESB-MH Holdings, LLC and states “PAY TO THE ORDER OF” and is left blank with no payee identified.
As stated in the Affidavit of Joel Marcano (“Marcano Affidavit”), the Assistant Treasurer of Emigrant, which is uncontroverted by any evidence produced by the Plaintiffs, the Assignment of Mortgage was not recorded or delivered to ESB-MH Holdings, LLC prior to the foreclosure sale, and Emigrant held both the Note and the Mortgage at all times relevant to the foreclosure proceedings. Also, as stated in the Affidavit of Marcano, in executing the Assignment of Mortgage, it was not Emigrant’s intent to transfer ownership of the Mortgage absent delivery of the Assignment of Mortgage.
On or about June 7, 2012, Emigrant mailed by first-class mail and by certified mail a notice of mortgagee’s sale of real estate to the Plaintiffs.[2] Emigrant caused notice of the foreclosure sale to be published on June 12, 2012, June 19, 2012, and June 26, 2012. The published notices identified Schechtman Halperin Savage, LLP as the “Attorney for Emigrant Mortgage Company, Inc., Present Holder of the Mortgage.” On or about August 9, 2012, Emigrant conducted a foreclosure sale of the Property. At the foreclosure sale, Wilion was the highest bidder. The foreclosure deed conveying title to the Properly to Wilion was executed by Emigrant on September 10, 2012 and recorded with the Registry of Deeds on September 11, 2012. Also recorded with the foreclosure deed on September 11, 2012 was an Affidavit signed on September 10, 2012 by the Assistant Vice President of Emigrant, stating the acts taken to conduct the foreclosure sale and compliance with G.L.c. 244, §14. A Power of Attorney was also executed by the Assistant Vice President of Emigrant on September 10, 2012 and recorded with the foreclosure deed on September 11, 2012. The Power of Attorney stated:
Be it known that I, Milagros Rivera-Perez, the undersigned Assistant Vice President of Emigrant Mortgage Company, Inc.... on behalf of said entity do hereby constitute and appoint Michael R. Harkins and Schechtman Halperin Savage, LLP . . . its attorneys, legal assistants, and/or its agents, as the undersigned’s attomey-in-fact for the limited and specified purposes of making legal entry upon 1643 Cambridge Street, Unit 52, Cambridge, MA, the premises on which Emigrant Mortgage Company, Inc. holds a mortgage, for the purpose of foreclosing said mortgage for breach of conditions therein, and further to execute documents necessary and directly incidental to the foreclosure auction. I hereby ratify all actions taken by Michael R. Harkins and Schechtman Halperin Savage, LLP and/or its agents in connection with the foreclosure of said mortgage.
On October 29, 2012, Wilion filed a summary process action in the Cambridge District Court, which action is pending. On January 31, 2013, the Plaintiffs filed this action, challenging the validity of the foreclosure sale and Wilion’s title to the property, issues which could be raised as defenses in the summary process action.
*531 DISCUSSION
Summary Judgment is granted where there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassesso v. Commissioner of Com, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesnerv. Technical Commc’ns Corp., 410 Mass. 805,809 (1991); Kourouvacilis v. GeneralMotors Corp., 410 Mass. 706, 716 (1991).
Under Massachusetts law, a mortgage holder is not required to obtain judicial authorization to foreclose on a mortgaged property. Where the mortgage grants the mortgage holder the statutory power of sale, as did the mortgage at issue here, it incorporates by reference the statutory power of sale set forth in G.L.c. 183, §21, and the mortgage holder can foreclose by exercising the statutory power of sale. Eaton v. Federal Nat’l Mortgage Ass’n, 462 Mass. 569, 579-80 (2012); U.S. Bank Nat’l Ass’n v. Ibanez, 458 Mass. 637, 645-46 (2011). The statutory power of sale is set out in G.L.c. 183, §21, which provides in relevant part:
The following ‘power’ shall be known as the ‘statutory power of sale,’ and may be incorporated in any mortgage by reference: But upon any default in the performance or observance of the foregoing or other condition, the mortgagee, or his executors, administrators, successors or assigns may sell the mortgaged premises ... by public auction on or near the premises then subject to the mortgage ... or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed ... to the purchaser . . . absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether in law or equity.
A mortgage holder “who sells under a power [of sale] must follow strictly its terms” and “ [i]f he fails to do so there is no valid execution of the power.” Ibanez, 458 Mass, at 646-47, quoting Moore v. Dick, 187 Mass. 207, 211 (1905); see Tamburello v. Monahan, 321 Mass. 445, 447 (1947); McGreevy v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 484 (1936); Roche v. Farnsworth, 106 Mass. 509, 513 (1871). The statutory power of sale requires compliance with the “statutes relating to the foreclosure of mortgages by the exercise of the power of sale” which are set out in G.L.c. 244, §§11-17C.[3] “One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose.” G.L.c. 183, §21 provides that the statutory power of sale can be exercised by “the mortgagee or his executors, administrators, successors and assigns.” G.L.c. 183, §21. “Under G.L.c. 244, § 14, ‘[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person’ is empowered to exercise the statutory power of sale.” Ibanez, 458 Mass, at 647. Further, as the Supreme Judicial Court has recently held, to have the authority to foreclose under the power of sale, the foreclosing entily must hold the mortgage and must also either hold the note or act on behalf of the note holder at the time of the notice and the sale. See Ibanez, 458 Mass, at 647; Eaton, 462 Mass, at 584-86.
The Plaintiffs initially claimed in their complaint that the foreclosure sale was void because Emigrant did not hold the Mortgage or the Note at the time of the notice of sale and the foreclosure sale of the Property. When confronted by the Marcano Affidavit, which explicitly stated that “Emigrant held both the note and the mortgage at all times relevant to the foreclosure proceedings,” the Plaintiffs conceded that there was no genuine issue of fact that Emigrant held both the Mortgage and the Note when it foreclosed. After the hearing before this court on these motions, however, the Plaintiffs moved on an emergency basis to supplement the record with the Allonge to the Note and to amend its response to Emigrant’s statement of facts, which motion the court allowed.
The Plaintiffs now argue that summaiy judgment is inappropriate because the Allonge creates a genuine issue of fact as to whether Emigrant held the Mortgage and Note at the time of the foreclosure sale. The Plaintiffs’ argument is unpersuasive. First, the Allonge is irrelevant to the issue of whether Emigrant held the Mortgage at the time of the foreclosure. The notices of the foreclosure sale identified Emigrant as the holder of the Mortgage. The Assignment of Mortgage states that Emigrant assigned the Mortgage to ESB-MH Holdings, LLC on November 30, 2009. The Marcano Affidavit, however, clearly states that the Assignment of Mortgage was not recorded or delivered to ESB-MH Holdings, LLC prior to the foreclosure sale, that Emigrant held the Mortgage at all times relevant to the foreclosure proceedings, and that, in executing the Assignment of Mortgage, it was not Emigrant’s intent to transfer ownership of the Mortgage absent delivery of the Assignment of Mortgage. The Marcano Affidavit is consistent with Emigrant’s August 22, 2011 letter to the Plaintiffs, which stated that “the assignment *532 transferring ownership of the note and mortgage to ESB-MH Holdings, LLC has not been recorded and the original note and mortgage, as well as the assignment of mortgage are in the possession of Emigrant Mortgage Company, Inc., which is prosecuting the foreclosure action as the holder and servicer of the loan.” The Plaintiffs have offered no competent evidence disputing these statements in the Marcano Affidavit. Without delivery of the Assignment of Mortgage to ESB-MH Holdings, LLC and intent to transfer the Mortgage, this Assignment of Mortgage was ineffective to transfer the Mortgage. See Sullivan v. Hudgins, 303 Mass. 442, 447 (1939) (assignment of mortgage not effective without delivery); Shurtleff u. Francis, 118 Mass. 154, 155 (1975) (assignment of mortgage not effective without delivery and intent to transfer). Accordingly, it is undisputed that Emigrant held the Mortgage when it noticed and conducted the foreclosure sale.
Second, the Plaintiffs’ assertion that the Allonge to Note creates a genuine issue of fact as to whether Emigrant held the Note at the time of the foreclosure sale, thus precluding summary judgment, is also unavailing. To begin, the Eaton decision, in which the Supreme Judicial Court held that a mortgagee must hold the note or act on behalf of the note holder at the time of the notice and foreclosure sale, was given prospective effect only and is therefore inapplicable to the foreclosure sale here. See Eaton, 462 Mass, at 588-89. As the Supreme Judicial Court ruled, “the interpretation of the term ‘mortgagee’ in G.L.c. 244, § 14, and related statutory provisions that we adopt in this opinion is to apply only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of this opinion.” Id. The date of the Eaton decision was June 22, 2012. Because the notices of the foreclosure sale of the Property here were given prior to June 22, 2012, the ruling of Eaton does not apply.[4]
Even if the Eaton decision were applicable, however, the evidence in the summary judgment record demonstrates that Emigrant did hold the Note at the time of the foreclosure sale. Again, the Marcano Affidavit unequivocally states that Emigrant held both the Note and the Mortgage at all times relevant to the foreclosure proceedings, which averment is consistent with Emigrant’s August 22, 2011 letter which stated that “the original note... [is] in the possession of Emigrant Mortgage Company, Inc., which is prosecuting the foreclosure action as the holder and servicer of the loan.” The Allonge to Note does not create a genuine issue of fact as to whether Emigrant held the Note at the time of the foreclosure. The Allonge to Note is first endorsed by Emigrant and states “PAY TO THE ORDER OF ESB-MH Holdings, LLC WITHOUT RECOURSE.” The Allonge is then endorsed by ESB-MH Holdings, LLC in blank, that is, it is signed by ESB-MH Holdings, LLC and states “PAY TO THE ORDER OF” and is left blank with no payee identified. The Allonge to Note does not evidence that the Note was not in Emigrant’s possession at the time of the foreclosure. The endorsements show only that the Note was first made payable to ESB-MH Holdings, LLC and then ESB-MH Holdings, LLC endorsed the Note in blank, which made the note payable to the bearer. See G.L.c. 106, §§3-109(a), 3-205(b). The Marcano Affidavit un-disputedly establishes that Emigrant possessed the original Note and was therefore the bearer at the time of the foreclosure. Accordingly, based upon the evidence in the summary judgment record, it is undisputed that Emigrant, as the holder of the Mortgage and Note at the time of the notice and sale, had the authority to foreclose on the Property.
The Plaintiffs next assert that the foreclosure sale is void because the notice of default and right to cure (“notice of default”) sent by Emigrant to the Plaintiffs did not strictly comply with the terms of the Mortgage. The Plaintiffs identify one discrepancy between the Mortgage language and the notice of default: the Mortgage states that “(t]he notice shall further inform the borrower of. . . the right to bring a court action to assert the non-existence of a default or of any other defense of Borrower to acceleration and sale,” whereas the notice of default sent to the Plaintiffs stated “[ajdditionally, notice is hereby given that you have the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default and any other defense you may have to acceleration and foreclosure and sale.” The plaintiffs argue that this discrepancy is significant because the foreclosure here, being a non-judicial foreclosure, did not involve a lawsuit for foreclosure and the notice of default did not inform the Plaintiffs that they could bring a court action to contest the default and defend against acceleration and sale. Relying on two decisions of the Housing Court, the Plaintiffs assert that this failure to strictly comply with the Mortgage regarding the contents of the notice of default renders the foreclosure sale void. See Spearhead Capital Corp. v. Rosado, Boston Housing Court, No. 12H84-SP-1825 (January 29, 2013); EMC Mortgage, LLC v. Rivera, Northeast Housing Court, No. ll-SP-3842 (October 3, 2012). In these two decisions, the Housing Court reasoned that this same discrepancy between the mortgage language and the notice of default rendered the sale invalid because “it is well established that strict compliance with the terms of the mortgage and the applicable statutes is required for a non-judicial foreclosure under a power of sale ...” EMC Mortgage, Northeast Housing Court, No. ll-SP-3842.
This- court disagrees with the reasoning of the Housing Court in these two decisions because no Massachusetts appellate court has held that strict compliance with terms of the mortgage unrelated to exercise of the power of sale is required to validate a foreclosure sale. The well established principle under Massachusetts law is that a power of sale must be exercised in strict compliance with the terms of the *533 power. Ibanez, 458 Mass, at 646-47, quoting Moore, 187 Mass, at 211 (one “who sells under a power [of sale] must follow strictly its terms” and “ [i]f he fails to do so there is no valid execution of the power”); see Tamburello, 321 Mass, at 447; McGreevy, 294 Mass, at 484; Roche, 106 Mass, at 513. Those cases in which the Supreme Judicial Court has held foreclosure sales void for failure to strictly comply with terms of the power all involve terms related to exercise of the power of sale, i.e., notice of the sale, publication of the sale, location of the sale. See Tamburello, 321 Mass, at 447 (where foreclosure sale was conducted in bank office nine-tenths of one mile from mortgaged premises, sale was not conducted “on or near the premises” as required by G.L.c. 183, §21 and sale was void); McGreevy, 294 Mass, at 484 (where foreclosure sale was not advertised or conducted in Suffolk County as required by power of sale in mortgage, foreclosure sale was invalid); Moore, 187 Mass, at 211 (where notice of foreclosure sale was given in newspaper other than one named in power of sale in mortgage, foreclosure sale was void); Roche, 106 Mass, at 513 (where notice of foreclosure sale did not name the owners of the property or the assignee of the mortgage who was advertising and conducting the sale, the sale was invalid). As these cases make clear, the terms of the power of sale are the terms governing how the power of sale shall be exercised. Such terms of the power of sale may be found in the statutes relating to the foreclosure of mortgages by exercise of the power of sale, specifically G.L.c. 244, §§11-17C, and in the mortgage itself. Not all terms of the mortgage, however, relate to exercise of the power of sale such that they constitute a term of the power.
Contrary to the Plaintiffs’ assertion, the language of G.L.c. 183, §21 which, upon default, authorizes a mortgagee to sell the mortgaged premises at a public auction, “first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale” cannot reasonably be interpreted to mean that a mortgagee must strictly comply with all terms of the mortgage before it may foreclose or the sale will be void. Rather, given the context of the language, the more reasonable interpretation is that the mortgagee must comply with the terms of the mortgage relating to the exercise of the power of sale, just as it must comply with the statutes relating to the exercise of the power of sale, because such terms constitute terms of the power of sale.
The notice of default and right to cure is made prior to acceleration of the debt and prior to invocation and exercise of the statutory power of sale. Mortgage terms related to the content of such notice of default, therefore, do not relate to exercise of the power of sale and are not terms of the power. Significantly, the Supreme Judicial Court in both Eaton and Ibanez did not identify G.L.c. 244, §35A, governing notices of default and right to cure, as a statute relating to the exercise of the power of sale.[5] Eaton, 462 Mass, at 581; Ibanez, 458 Mass, at 646. Accordingly, provisions in the mortgage relating to the notice of default and right to cure are not terms of the power and need not be strictly complied with for a foreclosure sale to be valid.
Other than the one discrepancy pointed out by the Plaintiffs, the notice of default and right to cure sent to the Plaintiffs strictly complied with the terms of the Mortgage and with the version of G.L.c. 244, §35A in effect at the time of foreclosure. As required by both the Mortgage and G.L.c. 244, §35A, the notice of default and right to cure informed the Plaintiffs of the nature of the default, the manner in which they could cure the default, the deadline by which such cure must be made, and that failure to cure may result in acceleration of the debt and sale and seizure of the Property. In compliance with G.L.c. 244, §35A, the notice informed the Plaintiffs that they had 90 days to cure the default and Emigrant did not begin foreclosure until after such 90-day period. The only discrepancy between the terms of the Mortgage and the notice of default and right to cure was that the notice informed the Plaintiffs that they had the right to assert the nonexistence of a default and any other defense they may have to acceleration and foreclosure and sale “in any lawsuit for foreclosure and sale” rather than by bringing a court action themselves. The court finds that despite this discrepancy, the notice substantially complied with this term of the Mortgage. The notice informed the plaintiffs that they could contest the default, acceleration, foreclosure and sale; the only difference was the method by which they could do so. The court does not find this discrepancy sufficiently substantial as to render the foreclosure sale void, particularly where Emigrant strictly complied with all terms of the statutory power of sale contained in the Mortgage and the statutes relating to the foreclosure of mortgages by exercise of a power of sale, as well as all other terms contained in the Mortgage and G.L.c. 244, §35A regarding the notice of default and right to cure.
The Plaintiffs further assert that the foreclosure sale is void because Emigrant did not record the notice of default and right to cure in the land records, as required by G.L.c. 244, §35A(e). G.L.c. 244, §35A(e) provides; “A copy of the notice required by this section and an affidavit demonstrating compliance with this section shall be filed by the mortgagee, or anyone holding thereunder, in any action or proceeding to foreclose on such residential real property.” Contrary to the plaintiffs argument, G.L.c. 244, §35A(e) does not require the notice of default and right to cure to be recorded in the land records, that is, the registry of deeds. Compare *534 G.L.c. 244, §15. G.L.c. 244, §35A(e) requires only that such notice be filed in any action or proceeding to foreclose. The registry of deeds is not an action or proceeding and one does not file documents at the registry, but rather records them. Accordingly, Emigrant did not violate G.L.c. 244, §35A(e).
Finally, the Plaintiffs claim that the foreclosure sale is invalid because Emigrant’s attorneys, Schechtman Halperin Savage, LLP, did not have authority under G.L.c. 244, §14 to publish the notices of sale prior to the foreclosure sale because they did not have a power of attorney prior to conducting these acts. G.L.c. 244, §14 provides: “The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized by the power.” G.L.c. 244, §14 (emphasis added). The Plaintiffs argue that this language requires an attorney at law, representing and acting on behalf of the mortgagee, to have a written power of attorney under seal to do any of the acts of the foreclosure sale, including publishing notices of sale in a newspaper. The Plaintiffs interpretation of the language of G.L.c. 244, §14 is unreasonable. The language of section 14 allows a mortgagee to confer its authority to perform the acts under the power upon another individual by a written power of attorney under seal. Such language, however, does not require an attorney at law to have a written power of attorney in order to represent a mortgagee and assist the mortgagee, as his attorney and agent, in publishing and sending the notices of sale. In doing so, an attorney at law is clearly “a person acting in the name of such mortgagee” under G.L.c. 244, §14.
Here, Schechtman Halperin Savage, LLP was representing Emigrant and acting in Emigrant’s name, not its own, in sending and having the notices published. The notices clearly identified that the mortgage holder was Emigrant and that Schecht-man Halperin Savage, LLP was acting as its attorneys at law. Moreover, the power of attorney executed by Emigrant explicitly ratified “all actions taken by Michael R. Harkins and Schechtman Halperin Savage, LLP and/or its agents in connection with the foreclosure of said mortgage.” Contrary to the Plaintiffs argument, such a ratification by the foreclosing entity, the holder of the mortgage, of its attorneys’ and agents’ acts of publishing and sending notices and assisting with the foreclosure is not analogous to a post-sale assignment of mortgage which, because an assignment of mortgage transfers legal title, cannot validate a foreclosure sale conducted by an entity that did not hold the mortgage at the time of the foreclosure sale. See Ibanez, 458 Mass, at 653-54. Accordingly, Schechtman Halperin Savage, LLP had the authority to act on behalf of its client Emigrant in publishing and sending the notices of sale, and thus there was no defect rendering the foreclosure sale invalid.
In conclusion, for the foregoing reasons, the foreclosure sale of the Property was conducted in accordance with Massachusetts law, there was no defect in the foreclosure sale, and the foreclosure sale was valid. The foreclosure deed transferred legal title to the Property to Wilion “absolutely and in fee simple; and such sale shall forever bar the mortgagor [the Plaintiffs] . . . from all right and interest in the mortgaged premises, whether in law or equity.” G.L.c. 183, §21.
ORDER
For the foregoing reasons, it is hereby ORDERED that Wilion’s Motion for Summary Judgment is ALLOWED on all of the Plaintiffs’ claims and on his counterclaim and that the Plaintiffs’ Cross Motion for Summary Judgment is DENIED. Declaratory judgment shall enter for defendant Wilion, declaring that the foreclosure of the Mortgage was conducted in accordance with Massachusetts law, that there was no defect in the foreclosure sale of the property to Wilion, and that Wilion holds good and valid, legal title to the Property.

Between September 2010 and July 2012, Pinti filed for bankruptcy four times and Phillips filed for bankruptcy once, which proceedings prevented Emigrant from advertising and conducting a foreclosure sale of the Property.

In Plaintiffs’ Answer to Wilion’s Counterclaim, Plaintiffs admitted this allegation of Wilion’s counterclaim.

In both Eaton and Ibanez, the Supreme Judicial Court identified G.L.c. 244, §§11-17C as the statutes regulating the foreclosure of mortgages by exercise of the power of sale, and significantly did not include G.L.c. 244, §35A, which relates to notices of default and the right to cure, as a statute relating to exercise of the power of sale. Eaton, 462 Mass, at 581, Ibanez, 458 Mass, at 646.

Notice of mortgagee’s sale of real estate was mailed to the Plaintiffs by first-class mail and by certified mail on or about June 7,2012, and notice of the foreclosure sale was published on June 12, 2012, June 19, 2012, and June 26, 2012.

Despite the Supreme Judicial Court’s failure to identify G.L.c. 244, §35A as a statute relating to exercise of the power of sale, there is disagreement as to whether §35A must be strictly complied with before a foreclosure sale will be valid. See Heath v. Seteras, 2013 WL 3864303 (D.Mass. July 23, 2013); compare Courtney v. U.S. Bank, 2013 WL 452941 (D.Mass. Feb. 6, 2013), and Payne v. U.S. Bank Nat’l Assoc., 2013 WL 1282235 (D.Mass. March 28, 2013), with Silva v. Deutsche Bank Nat’l Trust Co., 30 Mass. L. Rptr. 369 (Nov. 14, 2012), and Ross v. Deutsche Bank Nat’l Trust Co., 2013 WL 1225621 (D.Mass. March 27, 2013).